**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Melford Olson Honey, Inc.,

                Plaintiff,

v.                                                                                **ORDER**

Richard Adee                                              Civil No. 02-4800 (MJD/JGL)
d/b/a Adee Honey Farms,

                Defendant.

James T. Martin, Gislason Martin & Varpness, Counsel for Plaintiff.

Brian J. Donahoe, Kent R. Cutler, Cutler & Donahoe, Counsel for Defendant.

## I.   INTRODUCTION

After trial, the parties Melford Olson Honey, Inc. ("Mel-O") and Richard Adee d/b/a Adee Honey Farms ("Adee") filed cross post-trial motions. Mel-O's Motion for Partial JNOV/New Trial [Docket No. 84] seeks to modify, under Fed. R. Civ. P. 50, the responses to Jury Question Numbers 4, 4a, and 6. In the alternative, Mel-O moves for a new trial under Fed. R. Civ. P. 59, where that motion is also limited in scope to Questions 4, 4a, and 6.

Adee has also filed its own cross-motion for partial JNOV/new trial [Docket No. 88], seeking judgment as a matter of law on a variety of issues at trial. Lastly, Adee files a motion [Docket No. 87] requesting authorization to depose Dan Desai, Mel-O's former comptroller.

## II.   ANALYSIS

### A.   Standard for Motions for JNOV/New Trial

Under Rule 50, motions for judgment as a matter of law "present[] a legal question of whether there is sufficient evidence to support a jury verdict." Gray v. Bicknell, 86 F.3d 1472, 1478 (8th Cir. 1996) (quotation omitted). Viewing the facts in the light most favorable to the nonmoving party, judgment as a matter of law is appropriate only when "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party." Fed. R. Civ. P. 50; Wash Solutions, Inc. v. PDQ Mfg., Inc., 395 F.3d 888, 892 (8th Cir. 2004). Said another way, a court grants judgment as a matter of law "when the record contains no proof beyond speculation to support a verdict." Id. (citing Arabian Agric. Servs. v. Chief Indus., 309 F.3d 479, 482 (8th Cir. 2002)).

In contrast, a motion for a new trial pursuant to Rule 59(a) is appropriately granted if the verdict is against the weight of the evidence and if allowing it to stand would result in a miscarriage of justice. Fed. R. Civ. P. 59(a); In re Air Crash at Little Rock, Ark., 291 F.3d 503, 508-09 (8th Cir. 2002). In determining whether a verdict is against the weight of the evidence, "the trial court can rely on its own reading of the evidence—it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." White v. Pence, 961 F.2d 776, 780 (8th Cir. 1992) (quotation omitted). Overall, the "true standard for granting a new trial on the basis of the weight of

the evidence is simply one which measures the result in terms of whether a miscarriage of justice has occurred." Fireman's Fund Ins. Co. v. Aalco Wrecking Co., 466 F.2d 179, 187 (8th Cir. 1972).

### B.     Mel-O's Motion for Partial JNOV/New Trial

Mel-O's motion focuses on its objection, which the Court overruled at trial, to the introduction of evidence regarding the alleged oral modification of the March 2002 contract. Mel-O contends that the statute of frauds is inapplicable and that the answer to Question No. 4 should be "no" as a matter of law. Mel-O also argues that the Jury's response to Question 6 should be reduced from $620,206.00 to $603,904.84.

The special-verdict-form questions at issue are as follows:

> 4.  Did Mel-O breach the June 2002 contract by paying Adee Honey $.82 per pound for 551,374 pounds that were invoiced at $1.55 per pound?
>
>     YES _____      NO _____
>
>     a.  If your answer to # 4 is "YES," then what are Adee Honey's damages, if any, as a result of Mel-O's breach
>
>         $_____
>
> . . .
>
> 6.  Regardless of your answer to # 5, what sum of money is Adee Honey entitled to receive for the 620,206 pounds of honey it delivered to Mel-O and for which Mel-O has paid nothing?
>
>     $_____

3

### 1.     Question 4: Statute of Frauds and the Signed Purchase Order

In support of its argument that the statute of frauds is inapplicable to this case, Mel-O cites Minnesota's codification of the statute of frauds, which is as follows:

> Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

MINN. STAT. § 336.2-201(2).

Mel-O first argues that the statute of frauds is inapplicable because the parties' contract was confirmed by the signed purchase order sent to Adee. If section 336.2-201(2) applies, then service of a confirmation would satisfy the statute of frauds if Adee did not respond within ten days. But the purchase order was not, in fact, a confirmatory memorandum. Rather, because the oral conversation did not include a meeting of the minds as to quantity, the purchase order must be construed as an *offer* that, by its own stated terms, would expire in one month. For the purposes of the statute of frauds, a document that requires the receiving party's signature and return is not a "confirmation" at all, but is instead an "offer." Great Western Sugar Co. v. Lone Star Donut Co., 721 F.2d 510, 510-11 (5th Cir. 1983), affirming 567 F. Supp. 340 (D. Tex. 1983) ("A true confirmation requires no response."). The Fifth Circuit expressly rejected arguments similar to

Mel-O's, either that (1) a "confirmatory" letter, mailed after oral agreement, may only be viewed as a confirmation, or (2) such a situation presents factual issues regarding application of the statute of frauds. <u>Great Western Sugar</u>, 721 F.2d at 511.

> The trial court correctly determined that Great Western's letter was a written offer to conclude a binding contract, not a confirmation of an oral one. Having chosen to follow this course of dealing, Great Western is bound to it; and whether an unenforceable oral agreement existed is ***not a relevant issue of fact***.

<u>Id.</u> (emphasis added). As a matter of law, the instructions given was proper because the record does not indicate a meeting of the minds or a confirmation, but only an offer that Adee did not accept.

Further, Mel-O waived its claim by failing to object to the instruction under the newly offered grounds, or to provide a viable alternative, under Fed. R. Civ. P. 51(c)(1). That rule states that "[a] party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds of the objection." Because Mel-O waived its claim by failing to object to the instruction on the particular grounds it now offers, because the issues now objected-to were fairly and adequately submitted to the Jury, and because the Jury's determinations did not result in a miscarriage of justice, Mel-O's motion to modify the Jury's answer to Question 4 is denied.

### 2.    Question 6: Amount of Award to Adee

Mel-O next argues that the $620,206 amount the Jury awarded to Adee under Question 6 should be modified because it was incorrect as a matter of law. Mel-O contends that the parties agreed that Mel-O had not paid for 620,206 pounds of honey, and if the Jury determined the price to be $1 per pound, the Jury should properly award $603,904.84—a downward-adjusted number from Mel-O's prior overpayment. Mel-O reasons that if the Jury were to have found the price to be the alternative amount of $1.55 per pound, the amount would have totaled $961,319.30. Consequently, Mel-O concludes that the Jury must have determined the price to be $1 per pound, so the amount should be reduced to $603,904.84.

Under Minnesota law, a jury's award "does not have to match any particular figure in the evidence as long as the award 'is within the mathematical limitations established by the various witnesses and is otherwise reasonably supported by the evidence as a whole.'" Children's Broad. Corp. v. Walt Disney Co., 357 F.3d 860, 865 (8th Cir. 2004) (quoting Children's Broad. Corp. v. Walt Disney Co., 245 F.3d 1008, 1017 (8th Cir. 2001) (in turn, quoting Carroll v. Pratt, 76 N.W.2d 693, 697 (1956))). Because the parties contemplated that the answer to Question 6 could range from $603,904.84 to over $1 million, and because the provided amount was within that range, the Jury's verdict shall stand. Further, if the Court were to change the amount in Question 6, it would also have to change

Question 4a because the $1-per-pound assumption would also increase the Jury's award of $75,000 to $99,247.32 (551,374 pounds x $.18 per pound).

Because amounts awarded are factual determinations that the Jury here was within its province to find, because the amounts found were within the mathematical limitations established by the parties, and because the Jury's findings did not result in a miscarriage of justice, Mel-O's motion to modify the amount awarded is denied.

### C. Adee's Motions for JNOV or for New Trial

#### 1. Adee's Motion for JNOV

Adee renews its motions, made at the close of evidence, that as a matter of law (1) the contract was excused through the *force majeure* clause; (2) Adee's performance of the June 2002 contract was excused on the grounds of commercial impracticability; (3) Mel-O's damages claims were speculative, remote, and conjectural; and (4) Mel-O's damages claim should have been limited to cover damages pursuant to MINN. STAT. § 336.2.715. The Court denied each of these motions at trial. As recounted above, the standard for considering motions under Rules 50 is determining whether the record contains sufficient evidence— which is merely proof beyond speculation—to support a jury's verdict. Fed. R. Civ. P. 50; Wash Solutions, 395 F.3d at 892.

### (a)   Force Majeure Clause

Adee again argues that the Court should have ruled, as a matter of law, that Adee's performance was excused by *force majeure.* But whether there was a drought, and whether drought conditions permitted Adee to upwardly modify the price, are factual questions that were properly submitted to, and decided by, the Jury. Because the record contains sufficient evidence, beyond speculation, to support the Jury's verdict, Adee's motion for JNOV with regard to the *force majeure* clause is denied.

### (b)   Commercial Impracticability

Adee next argues that the Court should have ruled, as a matter of law, that Adee's performance was excused for the reasons of commercial impracticability, and that it allocated the honey in a reasonable manner. But this same argument was made, and rejected, during Adee's motion for summary judgment. As this Court noted in its rejection of Adee's argument then, the commercial impracticability issue "is replete with questions of fact," and "[t]he most glaring example is whether or not the allocation of honey was 'fair and reasonable' as required by the statute." Because the record contains evidence, beyond speculation, to support the Jury's verdict regarding commercial impracticability, Adee's motion is properly denied.

### (c) Mel-O's Damages as Speculative, Remote, & Conjectural

Adee contends that Mel-O did not produce any evidence of its attempt to cover for the any damages sustained, other than its self-serving testimony. Adee also argues that Mel-O's lost-profit calculation was speculative and that Mel-O's proffered profit margins exceeded its actual margins. But the Jury also heard and considered testimony that Mel-O could have sold honey at $1.34 per pound well into the Fall of 2002 if Adee had met its contractual obligations. To prove the amount of damages, a party must only require proof to a reasonable certainty. Duchene v. Wolstan, 258 N.W.2d 601, 606 (Minn. 1977). Here, because the record contains sufficient evidence to support the Jury's damages amount, Adee's motion regarding damages is denied.

### (d) Limiting Mel-O's Damages Claim to Cover Damages

Adee lastly argues that Mel-O failed to cover its damages amount, and that its damages should be limited to those it could not have reasonably prevented by cover. Under Minnesota law, incidental and consequential damages may be affected by a party's cover (or failure to provide cover) of its damages. MINN. STAT. § 336.2-715.

Again, each of the parties provided evidence regarding cover, or lack thereof, and the Jury properly considered that evidence in deciding the amounts awarded. Here, the record contains sufficient evidence, beyond speculation, to support the jury's findings regarding cover.

### 2. Adee's Motion for Prejudgment Interest on Damages

Adee also moves for an award of prejudgment interest under Minnesota law, which provides in relevant part:

> Except as otherwise provided by contract or allowed by law, preverdict . . . interest on pecuniary damages shall be computed [at an administratively determined rate] from the time of the commencement of the action or a demand for arbitration, or the time of a written notice of claim, whichever occurs first, except as provided herein. . . . If either party serves a written offer of settlement, the other party may serve a written acceptance or a written counteroffer within 30 days. After that time, interest on the judgment or award shall be calculated by the judge . . . in the following manner. The prevailing party shall receive interest on any judgment or award from the time of commencement of the action . . . or the time of a written notice of claim . . . until the time of verdict . . . only if the amount of its offer is closer to the judgment . . . than the amount of the opposing party's offer. If the amount of the losing party's offer was closer to the judgment or award than the prevailing party's offer, the prevailing party shall receive interest only on the amount of the settlement offer or the judgment . . . , whichever is less, and only from the time of commencement of the action . . . or the time of a written notice of claim . . . until the time the settlement offer was made. . . .

MINN. STAT. § 549.09, subd. 1(b). Because the award of prejudgment interest under these circumstances is a legal question, prejudgment interest shall be calculated at the rate of 4% simple interest per annum and shall be included in the judgment. See MINN. STAT. § 549.09 (citing State Court Administrator's ascribing a 4% interest rate).

10

Mel-O agrees that Adee is entitled to an award of prejudgment interest. It contends that the date of Adee's Counterclaim serves as the written notice of claim, and the Counterclaim's date of filing (December 18, 2002), marks the date of accrual.

The record demonstrates that December 18, 2002, is the operative date of accrual of prejudgment interest, and such interest continues through Mel-O's $200,000 Rule 68 Offer of Judgment on August 23, 2004. Accordingly, Adee is entitled to pre-verdict interest accruing from December 18, 2002, through August 23, 2004, at 4% simple interest per annum on the sum of $200,000. See MINN. STAT. § 549.09, subd. 1(c).

### 3.   Adee's Motion for a New Trial

Adee also brings a motion for a new trial under Fed. R. Civ. P. 59(a), based on Question 2 of the special-verdict form, and on a theory of anticipatory repudiation. As stated above, the standard for considering a motion for a new trial under Rule 59(a) is determining whether the verdict is against the weight of the evidence and whether allowing it to stand would result in a miscarriage of justice. Fed. R. Civ. P. 59(a); Air Crash, 291 F.3d 503, 508-09 (8th Cir. 2002).

#### (a)   Question 2: Undue Prejudice

Adee first argues that the verdict regarding Question 2 was against the weight of the evidence and results in a miscarriage of justice. Question 2 asked:

> 2.  Did the force majeure clause in the June 2002 contract, or commercial impracticability, excuse Adee Honey from delivering all of the honey specified in the June 2002 contract, and at the contract price of $1.00 per pound?
>
>     YES _____     NO _____

Adee contends that because it demonstrated that *force majeure* excused its performance, the only appropriate question was how Adee should have properly allocated its supply. Further, it argues that the special-verdict form should have included an additional question regarding impracticability. But Adee's proposed special verdict questions did not address either allocation or impracticability, simply asking:

> Was Adee Honey excused from delivering honey under the June 2002 contract pursuant to the force majeure clause in the contract?

(Docket No. 53 at ¶ 1). Further, although Adee requested instructions regarding allocation and impracticability in open court, it ultimately accepted the given instruction as appropriate.

The parties toiled with the Court for over two hours regarding the phrasing of the special verdict form, including Question 2. Further, Adee's counsel vigorously argued both defenses to the Jury, which was free to answer Question 2 "yes" if it were to determine that either defense was meritorious. Lastly, the submission and form of the special verdict rests within the Court's sound discretion. Wilkins v. St. Louis Housing Authority, 314 F.3d 927, 932 (8th Cir.

2002). Because the Court drafted Question 2 with a great deal of input from counsel, because the Jury properly considered evidence of allocation and impracticability, and because the special-verdict form did not result in undue prejudice or benefit to either party, Adee's motion is denied.

### (b) Anticipatory Repudiation

Adee next argues that Mel-O first breached the contract by making only partial payment for one shipment and by refusing to pay for another shipment, and those breaches eliminated Adee's further obligation under the contract. See Greer v. Kooiker, 253 N.W.2d 133, 142 (Minn. 1977) ("When one party breaches a contract, the other party's further performance under the contract is excused."). But this marks the first time that Adee has made this particular argument. Adee presented no argument or evidence of anticipatory breach in its summary judgment motion, during pre-trial, or at trial. As such, Adee's motion regarding anticipatory repudiation fails.

### D. Adee's Motion to Depose Mel-O's Former Comptroller

The final motion before the Court is Adee's motion for permission to depose Mel-O's former comptroller, Dan Desai. Mr. Desai began his employment with Mel-O a few months before trial (January 3, 2005), and he ended his employment shortly after the conclusion of trial (early March 2005). Mel-O contends that Desai was terminated for reasons unrelated to the trial. Shortly after trial, and

13

after Desai's termination, Desai apparently called Richard Adee to provide him with information that Desai said undermines several of Plaintiff's claims at trial. Mel-O believes that Desai made this call in retaliation for his termination.

Adee seeks to depose Desai to obtain information that may relieve Adee from judgment, pursuant to Fed. R. Civ. P. 60(b), which controls mistakes, inadvertence, excusable neglect, newly discovered evidence, and fraud. However, Adee has not previously listed Desai as a witness, and the record demonstrates that Desai assisted in several meetings discussing matters that are protected by attorney-client privilege. Further, Adee made this extraordinary request for a discovery deposition ten days after the conclusion of trial.

The Court agrees that Rule 60 is not a proper vehicle for a losing party to take a second bite of the apple. And the mere fact that the discovery period closed in September 2003—several months before Desai began his employment with Mel-O—does not provide sufficient justification to permit a discovery deposition of an allegedly disgruntled employee after the completion of trial, and after entry of the Jury's verdict. Accordingly, Adee's motion is denied.

## III. CONCLUSION

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Mel-O's Motion for JNOV or for New Trial [Docket No. 84] is **DENIED**;

2. Adee's Motion for Order Authorizing Deposition of Dan Desai Docket No. 87] is **DENIED**; and

3. Adee's Renewed Motion for JNOV or for New Trial [Docket No. 88] is **GRANTED IN PART AND DENIED IN PART**;

    a. Adee's motion for prejudgment interest under MINN. STAT. § 549.09(1)(b) is **GRANTED**, entitling Adee to pre-verdict interest accruing from December 18, 2002, through August 23, 2004, at 4% simple interest per annum on the sum of $200,000;

    b. The remainder of Adee's motion is **DENIED**.

Dated: August 1, 2005　　　　　　　　　　s/ Michael J. Davis
　　　　　　　　　　　　　　　　　　　　　Judge Michael J. Davis
　　　　　　　　　　　　　　　　　　　　　United States District Court